79  551
s89  501

## T. O. Tanton v. Christina Boomgarden.

1. MORTGAGE FORECLOSURE—*Without Right, Trespass the Remedy.*—Where a person undertakes to foreclose a mortgage without right he will be guilty of a trespass, for which an action at law furnishes a complete remedy.

2. EQUITY PRACTICE—*Where the Bill is to be Dismissed for Want of Equity.*—When the proofs failed to sustain the allegations as to the only ground of equitable jurisdiction contained in the bill it should be dismissed for want of equity.

**Bill for Relief.**—Appeal from the Circuit Court of Livingston County; the Hon. GEORGE W. PATTON, Judge, presiding. Heard in this court at the May term, 1898. Reversed with directions to dismiss the bill. Opinion filed December 14, 1898.

ELLWOOD & MEEK, attorneys for appellant.

HERBERT POWELL, attorney for appellee.

MR. JUSTICE CRABTREE delivered the opinion of the court.

This was a bill in equity involving a controversy between landlord and tenant, as well as between a chattel mortgagor and mortgagee.

The suit was originally commenced against appellant, together with Reiner Strohmeyer and E. Husseman, and from the allegations of the bill it appeared that appellant, being the owner of land in Livingston county, rented the same for the years 1895 and 1896 to George Boomgarden, the husband of appellee; that on December 19, 1896, she executed to Strohmeyer a note for $405.63 with interest, and a chattel mortgage to secure the same upon property therein described; that such note did not represent a *bona fide* indebtedness then owing by appellee but was claimed by Strohmeyer to be given in lieu of certain obligations owing to him by George Boomgarden, her husband; that her signature was obtained to said note and mortgage by threats of criminal prosecution by said Strohmeyer and Tanton against George Boomgarden, and alleging

that appellant had full knowledge of the entire trans-
action, was present at and participated therein, and that
appellee was made to believe that if she did not execute
said instrument all of her means of support for herself
and family would be taken from her, and that, yielding
to such threats, she signed and delivered the notes and
mortgage; that again in April, 1897, Strohmeyer having
purchased, at large discount, other notes of George
Boomgarden (a part of which she alleges was usurious and
without consideration) came again, and with like threats as
those used before, induced appellee to execute a certain
other note for the sum of $465, or thereabouts, which sum
was made up partly of notes of George Boomgarden amount-
ing to $250, and the balance of $200 was included for
money which Strohmeyer agreed thereafter to advance to
appellee on her request, but which it is averred he there-
after refused to do; that because of the threats she gave a
chattel mortgage to secure the last mentioned note; that
appellant was present and had full knowledge of the last
mentioned transaction and participated therein, and has
since purchased the notes and mortgages, obtaining them at
a discount of $325. Appellee then averred in her bill that
after appellant purchased said notes she became involved in
litigation of replevin regarding the property named in the
mortgages, the appellant being surety on the replevin bond;
that appellant advised her as to the course of such litiga-
tion and employed attorneys who pretended to represent
her interests, but in reality were retained in the interest of
appellant, and that when she persisted that she should have
an attorney to represent her interests alone, appellant
objected and induced her to believe that it was unnecessary,
and that if she persisted he would desert her interests, the
said mortgages would be foreclosed, and her crops seized by
him as her landlord; that she did employ counsel to repre-
sent her and that thereupon appellant, on September 28,
1897, by E. Husseman, his agent, seized all the property
named in the two mortgages and advertised the same for
sale, to occur October 2, 1897; that such seizure was wholly

without cause, and contrary to the express terms of either of said mortgages or the notes secured thereby, and was for the sole purpose of crippling and annoying appellee for the gain of appellant; that appellant was the owner of certain premises described in the bill upon which appellee was living with her husband, George Boomgarden, on the 15th day of February, 1897, under a lease from appellant to said George; that on that date appellant required her to lease said premises from him, and alleged that said George had stolen and converted of the crops and grain of appellant 2,000 bushels of corn, or thereabouts, and threatened her and her husband that unless she signed the lease which he then presented the said George would be prosecuted criminally for the alleged theft, and that she, with her personal property and children would be required to leave the premises on March 1st, which threats, it is alleged, were made to the said George and communicated by him to his wife, the appellee; that she thereupon yielded to the demands of appellant and signed the lease, which appellant took immediate possession of and appellee had not had access thereto; that by the terms of the lease she was required to pay appellant, as rent, two-fifths of all grain raised on the premises to be threshed and shelled and delivered to market, the sum of $270 for house rent of the premises, and $5 per acre for meadow and pasture land, amounting to $170.50, which rental she alleges to be unreasonable and far in excess of the ordinary charges for rent of like premises in that locality; that appellant required her to deliver to him, out of the remaining three-fifths of the corn that she might raise upon the premises, 2,000 bushels, the amount claimed by appellant to have been stolen from him by George Boomgarden.  Avers that the terms of the lease were unjust and inequitable and that she would not have signed the same but for the threats aforesaid; that she raised upon the premises 120 acres of corn and 95 acres of oats; that the corn was in the field ready to be gathered, but that she had no means of gathering the same because of the seizure of the property under the chattel mortgages; that her oats

crop amounted to over 4,000 bushels, which was taken by appellant and sold without any direction from her; that he retained the money and has not paid the same to her or accounted to her therefor. Alleges that she has no property except that named in the two mortgages, and that by the various acts of appellant her credit has fallen so low that she is unable to procure any replevin bond to replevin the property. She prays that appellant, Strohmeyer and Husseman may be required to answer the bill, the oath being waived; that the notes and mortgage be canceled; that Strohmeyer and appellant be required to account for all money received by them for or on her account, or money expended for her account for which she might be liable; that appellant may have relief against the alleged unreasonable and inequitable demands contained in the lease, and be relieved from fulfilling the same except as to such as may be reasonable and customary rental prices; and that she may be relieved from delivering said 2,000 bushels of corn, and that appellant be required to fully account for all money received by him for said oats, or any other money received under said lease. Also prays for an injunction restraining appellant from selling said personal property or transferring the several notes mentioned, and to restrain appellant and his agents from interfering with appellee in the possession of the leased premises or the management or sale of the crops raised thereon. We have omitted to state that it was alleged in the bill that the complainant was of foreign birth, with an inaccurate acquaintance with the English language, and entirely inexperienced in methods of business, and with the form and legal effect of notes, chattel mortgages, leases, and the statutes of Illinois.

The defendants, Tanton, Strohmeyer and Husseman, answered the bill denying all material allegations concerning which there is any controversy. The giving of the notes and mortgages was admitted, but it is expressly denied there was any fraud or duress in the transactions. Appellant admits he purchased the notes and mortgages from Strohmeyer, but avers that he did so at the request of appel-

Tanton v. Boomgarden.

lee and for a discount of $125 instead of $325 as averred in the bill. He also admits that he did not pay Strohmeyer the amount of the $200 note, nor was the discount taken off it; but that the arrangement between appellee and appellant and Strohmeyer was that appellant should take the place of Strohmeyer and carry out his agreement in regard to advancing money on the $200 note, which appellant avers he has carried out and advanced the full amount of said $200.

Appellant admits he caused the foreclosure of the chattel mortgages, but avers that both of said mortgages contained a clause to the effect that " if said mortgagee or assigns, with or without apparent cause, feel insecure, then said mortgagee or his representatives may, without suit, take possession of said goods and chattels wherever they may be found and sell the same at public or private sale;" and avers that, feeling insecure, he took the property under the chattel mortgages as he claimed he had the right to do.

Appellant admits the leasing of the farm to George Boomgarden, and avers that during the time the latter occupied the same he became an habitual drunkard, and that out of compassion for appellee and her family appellant induced said George to take the cure for drunkenness, and he, appellant, paid the costs thereof at his own expense; that said George was cured and remained sober for about three months and then returned to drink, becoming again an habitual drunkard.

Admits the leasing of the farm to appellee but denies all charges of fraud, threats or duress whatever in connection with the making of the lease to her as alleged in the bill.

The remainder of the answer goes in denial and explanation of the various charges in the bill upon which appellee based her claim to relief.

Inasmuch as Strohmeyer and Husseman did not appeal from the decree in the court below we need not set out their answers here nor further refer to them.

A preliminary injunction was granted in the case without notice and without bond, and a receiver was appointed, all

of which was alleged to have been done in vacation, and error is assigned as to the action of the court thereon, but in the view we have taken of this case we deem it unnecessary to consider this assignment of error.

The case went to a final hearing on the evidence, and, from its recitals in the final decree, the court found from the evidence, the notes and mortgages executed by appellee to Strohmeyer and purchased by appellant are valid and binding upon appellee to the amount thereof, except that she should be credited with the $125 discount which appellant obtained from Strohmeyer when he purchased the same. The court further finds that appellant arbitrarily, and without any reasonable grounds for feeling himself unsafe or insecure, seized the property covered by said mortgages and attempted to foreclose the same against the will of appellee; that in executing the lease appellee signed, not willingly, but under the compulsion of her fears and of hard or straitened circumstances, an unconscionable and inequitable lease in the amount of rent to be paid, and decreed that said lease, bearing date January 20, 1897, should be canceled and held for naught by reason of the circumstances and means by which it was obtained. And the court then goes on to find what would be a reasonable rent and decrees accordingly; states the account between the parties and finds a balance of $64.14 due appellant; dismisses the bill against Strohmeyer and Husseman for want of equity, and orders one-third of the costs, other than the receiver's costs and expenses, to be taxed against the complainant, and the other two-thirds against appellant. From this decree appellant prosecutes an appeal to this court and assigns many errors upon the record.

The record is lengthy and we have only attempted to state such portions of the pleadings and findings of the court as are necessary to a proper understanding of the reasons for our decision.

We are of the opinion that the only grounds of equitable jurisdiction set forth in the bill were the alleged fraud, threats and duress in the execution of the lease, and that as

to all other matters there was an adequate remedy at law. Our examination of the evidence in the record satifies us that the proofs do not sustain the allegations of fraud and duress in the execution of the lease, and appellee was not entitled to a cancellation thereof.    There was no allegation of insolvency as to appellant, and nothing to show he was not amply able to respond in damages for any wrongful or oppressive conduct in foreclosing the chattel mortgages. The court found them to be valid obligations, and we think the evidence abundantly sustains that finding.    This being so, if he undertook to foreclose them without right, he would be guilty of a mere trespass, for which an action at law would furnish a complete remedy. . When the proofs failed to sustain the allegations as to the only ground of equitable jurisdiction contained in the bill, it should have been dismissed for want of equity.

We do not deem it necessary to discuss or pass upon the many errors assigned, because, in our view, the bill should have been dismissed for want of equity; that would dispose of the entire case.

The decree will be reversed, with directions to the Circuit Court to dismiss the bill.